UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
CTA HOT BREAD, INC.,                            :
                           Plaintiff,   :
                                                  :
    -against-                                   :        REPORT &
                                              :        RECOMMENDATION
                                                  :
FLOWERS BAKING CO. OF OXFORD, INC.,   :        21-CV-6488 (LDH)(MMH)
                                                  :
                         Defendant.   :
                                                  :
------------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

       Plaintiff CTA Hot Bread, Inc. commenced this diversity action against Defendant Flowers Baking Co. of Oxford, Inc. for breach of contract. (*See generally* Compl., ECF No. 1.)[1] Before the Court is Defendant's motion to compel arbitration and to stay this action. (Mot., ECF No. 14.) The Honorable LaShann DeArcy Hall referred the motion for report and recommendation. For the reasons stated below, the Court respectfully recommends that the motion should be **granted**, and that the parties should submit a joint status report to the Court within 14 days after the arbitration.

**I.    BACKGROUND**[2]

       Defendant is a Pennsylvania corporation with its principal place of business in Pennsylvania. (Compl., ECF No. 1 ¶¶ 3, 6.) Defendant, a subsidiary of Flowers Foods, Inc.,

---

[1] All citations to documents filed on ECF are to the ECF document number (*i.e.*, "ECF No. ___") and pagination "___ of ___" in the ECF header unless otherwise noted.

[2] The Court relies on the Complaint (ECF No. 1), the Complaint's exhibits (ECF Nos. 1-3 to 1-5) and the parties' submissions on the motion. Defendant's Motion (ECF No. 14) ("Def. Mot.") includes a memorandum of law (ECF No. 15) ("Def. Mem."), the Declaration of Jamie Haar (ECF No. 16) ("Haar Decl."), the declaration's 5 exhibits (ECF Nos. 16-1 to 16-6) ("Haar Decl. Ex. ___, ECF No. ___"). Defendant also filed a reply brief (ECF No. 19) ("Def. Reply"). Plaintiff's

operates as the sales and distribution manager for its parent company in Pennsylvania, New York, New Jersey, Maryland, and Virginia. (*Id.* ¶¶ 8–9.) Defendant sells franchise distributorships that grant a franchisee the exclusive right to distribute bakery products in defined territories. (*Id.* ¶ 10.) Plaintiff, a New York corporation with a principal place of business in New York, owned two distributorships purchased from Defendant. (*Id.* ¶¶ 5, 11.) Plaintiff's sole owner is Che Alexander, who is not a party to this action. (*Id.* ¶ 2; Alexander Decl., ECF No. 18-7 ¶ 1.)

### A. Plaintiff's Distributorships

On or about September 14, 2016, Plaintiff purchased two franchise distributorships from Defendant pursuant to two franchise agreements ("Distributor Agreements"). (Compl., ECF No. 1 ¶¶ 11–12; Haar Decl. Exs. A & B, ECF Nos. 16-1 & 16-2.) Through the purchase of these distributorships, Plaintiff obtained the right to sell and distribute Defendant's products in two defined areas in Jamaica, Queens. (Compl., ECF No. 1 ¶¶ 33, 42.)

Each Distributor Agreement included arbitration provisions and incorporated by reference an Arbitration Agreement (the "2016 Arbitration Agreement") attached as Exhibit K. (Alexander Decl., ECF No. 18-7 ¶¶ 2–3; Haar Decl., ECF No. 16 ¶¶ 2–3; Haar Decl. Ex. A, ECF No. 16-1 at 35–38; Haar Decl. Ex. B, ECF No. 16-2 at 35–38.) The 2016 Arbitration Agreement provides:

> The parties agree that any claim, dispute, and/or controversy except as specifically excluded herein, that either DISTRIBUTOR (including its owner or owners) may have against COMPANY (and/or its affiliated companies and its and/or their directors, officers, managers, employees, and agents and their

---

opposition includes a memorandum of law (ECF No. 17) ("Pl. Mem."), the Declaration of Robert Halpern (ECF No. 18) ("Halpern Decl."), and that declaration's seven exhibits (ECF Nos. 18-1 to 18-7) ("Halpern Decl. Ex. ___, ECF No. ___").

2

> successors and assigns) or that COMPANY may have against DISTRIBUTOR (or its owners, directors, officers, managers, employees, and agents), arising from, related to, or having any relationship or connection whatsoever with the Distributor Agreement between DISTRIBUTOR and COMPANY ("Agreement"), including the termination of the Agreement, services provided to COMPANY by DISTRIBUTOR, or any other association that DISTRIBUTOR may have with COMPANY ("Covered Claims") shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act (9 U.S.C. §§ 1, et seq.) ("FAA") in conformity with the Commercial Arbitration Rules of the American Arbitration Association ("AAA" or "AAA Rules"), or any successor rules, except as otherwise agreed to by the parties and/or specified herein.

(Halpern Decl. Ex. 5, ECF No. 18-5 at 1; *see also* Haar Decl. Ex. B, ECF No. 16-2 at 35.) "Covered Claims . . . include, but are not limited to: breach of contract[.]" (Halpern Decl. Ex. 5, ECF No. 18-5 at 2; *see also* Haar Decl. Ex. B, ECF No. 16-2 at 36.)

Three years later, effective October 19, 2019, Defendant terminated one of Plaintiff's distributorships. (Compl., ECF No. 1 ¶ 39.) Defendant subsequently terminated Plaintiff's second distributorship, effective March 25, 2021. (*Id.* ¶¶ 55, 60; Compl. Ex. 5, ECF No. 1-5.)

**B.     The *Carr* Action Settlement**

In or about 2017, Alexander joined a combined class action lawsuit against Defendant and its parent company: *Carr v. Flowers Foods, Inc.*, No. 15-CV-6391 (E.D. Pa. filed Dec. 1, 2015), and *Boulange v. Flowers Foods, Inc.*, No. 16-CV-2581 (E.D. Pa. filed May 24, 2016) (collectively, the "*Carr* Action"). (Alexander Decl., ECF No. 18-7 ¶ 4; Halpern Decl., ECF No. 18 at 1.) "Plaintiffs in this suit are distributor drivers for a baked goods retailer, who assert that they have been improperly categorized as independent contractors rather than employees under federal and state law, and thereby deprived of overtime pay, other wages, and records." *Carr v. Flowers Foods, Inc.*, No. 15-CV-6391, 2019 WL 2027299, at *1 (E.D. Pa. May 7, 2019).

3

On May 13, 2020, the parties in the *Carr* Action executed a final settlement agreement. (*See generally* Halpern Decl. Ex. 4, ECF No. 18-4.) Pursuant to the Settlement Agreement, the class members eligible to receive a settlement payment were "any individual who operated under a Distributor Agreement with Flowers/Oxford" during a specific period and in several states, "and who did not sign a new Distributor Agreement or Amendment containing the Arbitration Agreement with a class action waiver, except for those distributors noted in footnote 2 below, who opted into the Action during the appropriate notice period and have remained in the litigation through final approval of this Agreement." (Haar Decl. Ex. C., ECF No. 16-3 at 7 § 3.7.) In a footnote, the Settlement Agreement states that Alexander is one of 17 people "who are FLSA Collective Members only and who also signed the Arbitration Agreement but are being allowed to participate in this settlement[.]" (*Id.* at 7 n 2.)

Pursuant to the Settlement Agreement, Alexander and other class members received a Settlement Notice. (*See* Alexander Decl., ECF No. 18-7 ¶¶ 5, 7.) The Settlement Notice summarized class members' arbitration options as follows:

> The proposed Amendment to the Distributor Agreement contains an arbitration provision. You will receive an additional $3,500 for agreeing to arbitration. You have the right to reject arbitration but stay in the settlement and receive a settlement payment (except you would not get paid the additional $3,500). Please see the enclosed Arbitration Agreement Packet for more information.

(Halpern Decl. Ex. 2, ECF No. 18-2 at 2 ("Arbitration Agreement Option").) The "Arbitration Agreement Packet" attached as Exhibit 1 to the Settlement Notice included a summary of the arbitration option and related amendment to distributor agreements; arbitration elections forms and instruction; an "Amendment to Distributor Agreement"; and an Arbitration Agreement (the "2020 Arbitration Agreement"). (Halpern Decl. Ex. 1, ECF No. 18-1 at 7–13.) The summary also advised class members, "you have the option to receive an additional $3,500.00

4

if you sign both the attached Amendment to your Distributor Agreement and the Arbitration Agreement, attached as Exhibit 1 to the Settlement Agreement." (Halpern Decl. Ex. 1, ECF No. 18-1 at 3.) By completing and signing the arbitration election forms, distributors could reject or accept the additional payment, the Amendment to Distributor Agreement, and the 2020 Arbitration Agreement. (*Id.* at 5.)

Alexander rejected the additional $3,500 payment, the Amendment to Distributor Agreement, and the 2020 Arbitration Agreement. (*See* Alexander Decl., ECF No. 18-7 ¶ 9.) On or about October 20, 2020, Plaintiff received a settlement check from Defendant and its parent company in the *Carr* Action, but not the additional $3,500 payment. (Compl., ECF No. 1 ¶ 30.)

### C. The Instant Action

Plaintiff commenced this action in November 2021, asserting a cause of action for breach of the Distributor Agreements because Defendant terminated Plaintiff's distributorships. (*Id.* ¶¶ 65–79.) In February 2022, Defendant requested a pre-motion conference for an anticipated motion to compel arbitration, which Plaintiff opposed. (Def. Ltr., ECF No. 9; Pl. Ltr., ECF No. 11.)

At the Court's directive, Defendant moved to compel arbitration and to stay this action on May 18, 2022, arguing that the 2016 Arbitration Agreement is binding and enforceable. (April 5, 2022 Order; *see generally* Def. Mot., ECF No. 14.) In opposition, Plaintiff argues that the *Carr* Action settlement terminated the 2016 Arbitration Agreement. (Pl. Mem., ECF No. 17 at 6–9.) Plaintiff further argues that Defendant is equitably estopped from enforcing the 2016 Arbitration Agreement because Defendant allowed distributors to reject arbitration as part of the *Carr* Action settlement. (*Id.* at 10.) Defendant replied, rejecting both arguments.

5

(Pl. Reply, ECF No. 19.) Judge DeArcy Hall referred the motion for report and recommendation. (May 24, 2022 Order.) The parties presented oral argument at a motion hearing. (Jan. 11, 2023 Minute Entry and Order.)

## II. LEGAL STANDARDS FOR MOTIONS TO COMPEL ARBITRATION

"In the context of motions to compel arbitration . . . the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "The summary judgment standard requires a court to 'consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)). "In doing so, the court must draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229.

Pursuant to the FAA, "[a] written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity[.]" 9 U.S.C. § 2. "The FAA 'is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'" *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

"In deciding whether to compel arbitration, a court must first decide whether the parties agreed to arbitrate." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022) (citing *Spear, Leeds & Kellogg v. Cent. Life Assur. Co.*, 85 F.3d 21, 25 (2d Cir. 1996)). "Only if the court concludes an agreement to arbitrate exists does it determine (1) the scope of

6

the agreement to arbitrate; (2) whether Congress intended any federal statutory claims asserted to be non-arbitrable; and (3) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Zachman*, 49 F.4th at 101 (citing *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)).

"In interpreting a validly formed arbitration agreement, [courts] apply a 'presumption of arbitrability' if the 'arbitration agreement is ambiguous about whether it covers the dispute at hand.'" *Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265, 269 (2d Cir. 2015) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 301 (2010)). "[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014) (citation omitted).

"The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman*, 49 F.4th 95 at 101–02 (collecting cases). "This burden does not require the moving party to show that the agreement would be enforceable—only that an agreement to arbitrate existed." *Id.* at 102. "Once the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to 'show[ ] the agreement to be inapplicable or invalid.'" *Id.* (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)). "'[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration

7

agreements.'" *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (quoting *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)).[3]

## III. DISCUSSION

For the reasons below, the Court recommends compelling arbitration because (1) the parties entered into a valid agreement to arbitrate and (2) Plaintiff's claims fall within the scope of that agreement.[4]

### A.     A Valid Agreement to Arbitrate Exists

#### 1.     Defendant Has Demonstrated that an Arbitration Agreement Exists

"Whether an agreement to arbitrate exists between the parties is governed by state contract law." *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 834 (2d Cir. 2021); *Nicosia*, 834 F.3d at 229 ("The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles."). The 2016 Arbitration Agreement is "governed by the FAA and Pennsylvania law to [the extent that] the Pennsylvania law is not inconsistent with the FAA." (Halpern Decl. Ex. 5, ECF No. 18-5 at 3; *see also* Haar Decl. Ex B, ECF No. 16-2 at 37.) Under Pennsylvania law, contract formation requires (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite

---

[3] The standard for determining whether to compel arbitration is materially the same whether applying Second Circuit or Third Circuit law. *See, e.g.*, *Jaludi v. Citigroup*, 933 F.3d 246, 254 (3d Cir. 2019) ("Deciding whether arbitration is required is a two-step process: in the first step, the court determines whether 'there is an agreement to arbitrate,' and then in the second step, the court decides whether 'the dispute at issue falls within the scope of that agreement.'") (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009)).

[4] Because Plaintiff's claims are for breach of contract and of the implied covenant of good faith and fair dealing (Compl., ECF No. 1 ¶1), the Court does not consider "whether Congress intended any federal statutory claims asserted to be non-arbitrable." *Zachman*, 49 F.4th at 101.

to be enforced, and (3) consideration." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).

In this instance, Defendant satisfied its burden under Pennsylvania law to demonstrate that an agreement to arbitrate exists. *Zachman*, 49 F.4th at 102. **First**, both parties signed the Distributor Agreements, which attached the 2016 Arbitration Agreement. (Haar Decl. Ex. B, ECF No. 16-2 at 37.) "In Pennsylvania, as in most jurisdictions, a signature on a contract is evidence of legal assent." *Smeck v. Comcast Cable Commc'ns Mgmt., LLC*, No. 19-CV-3625-JMY, 2020 WL 6940011, at *4 (E.D. Pa. Nov. 25, 2020) (citing *Dicent v. Kaplan Univ.*, 758 F. App'x 311, 313 (3d Cir. 2019)). Indeed, Alexander acknowledges that he was the only person authorized to sign any agreement between Plaintiff and Defendant, that he signed two distributorship agreements in 2016, and that he "was aware that the two distributorship agreements contained mandatory arbitration." (Alexander Decl., ECF No. 18-7 ¶¶ 2–3.) Consequently, the parties here intended to be bound by the 2016 Arbitration Agreement.

**Second,** the 2016 Arbitration Agreement is sufficiently definite to be enforced because it is "specific about the types of disputes which are subject to arbitration, and the procedures by which the arbitration will be conducted." *Morina v. Neiman Marcus Grp., Inc.*, No. 14-CV-1394, 2014 WL 4933022, at *10 (E.D. Pa. Oct. 1, 2014). Here, the 2016 Arbitration Agreement defines breach of contract as one of the "covered claims" subject to arbitration. (Haar Decl. Ex. B, ECF No. 16-2 at 36). By its terms, the 2016 Arbitration Agreement "shall not affect any claims distributor may have or assert in [the *Carr* Action]" and "does not cover" specific claims not at issue in this case. (*Id.*) Moreover, the 2016 Arbitration Agreement describes the procedures by which arbitration will be conducted: "in conformity with the Commercial Arbitration Rules of the American Arbitration Association ('AAA' or 'AAA

9

Rules'), or any successor rules, except as otherwise agreed to by the parties and/or specified herein" and "before a single arbitrator unless all parties to the arbitration agree otherwise in writing." (*Id.* at 35.) Consequently, there is sufficient detail for the Court to enforce this Agreement.

**Third,** there was adequate consideration to support the 2016 Arbitration Agreement. "When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). Pursuant to the 2016 Arbitration Agreement, "DISTRIBUTOR acknowledges that it has received and read and specifically agrees to be bound by this Arbitration Agreement." (Haar Decl. Ex. B, ECF No. 16-2 at 37.) This language could not be any plainer in stating the parties' intent to be bound.

Therefore, Defendant has met its burden to show that the parties agreed to arbitrate any disputes arising under the Distributor Agreements.

### 2. Plaintiff Has Not Shown That the 2016 Arbitration Agreement is Invalid or Unenforceable

Notwithstanding the foregoing, Plaintiff argues that the arbitration agreement is invalid or unenforceable because (1) the *Carr* Action Settlement Notice and the 2020 Arbitration Agreement ended the parties' agreement to arbitrate; and (2) Defendant is equitably estopped from enforcing the 2016 Arbitration Agreement. (Pl. Mem., ECF No. 17 at 7–10.) As discussed below, the Court disagrees.

#### a. The Carr Action Settlement Did Not Modify the Arbitration Agreement

"A written contract, such as exists in this case, may be modified, but any such modification must be proved by clear, precise and convincing evidence, which may be done through evidence

10

of conduct that 'clearly shows the intent to waive the requirement that the amendments be made in writing.'" *Belnick, Inc. v. TBB Glob. Logistics, Inc.*, 106 F. Supp. 3d 551, 563 (M.D. Pa. 2015) (quoting *Somerset Community Hosp. v. Allan Mitchell & Assocs.*, 454 Pa. Super. 188, 685 A.2d 141, 146 (1996)). "Such a modification [through subsequent words or conduct], 'if proven by clear, precise and convincing evidence, is valid despite a provision in the original written agreement prohibiting non-written modifications.'" *AFCO Cargo PIT LLC v. DHL Exp. (USA), Inc.*, No. 10-CV-1080, 2010 WL 5140622, at *2 (W.D. Pa. Dec. 10, 2010) (quoting *First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co.,* 824 F.2d 277, 280 (3d Cir.1987)).

Plaintiff presents no clear, precise, and convincing evidence that the *Carr* Action settlement terminated the Arbitration Agreement. *Zachman*, 49 F.4th at 102; *Hampden Real Est., Inc. v. Metro. Mgmt. Grp., Inc.*, 142 F. App'x 600, 603 (3d Cir. 2005). Moreover, Plaintiff overstates its case when it argues "[i]t was the intention of the parties to make arbitration 'purely voluntary' for all the class members, with the enticement of $3500 to sign the Arbitration Agreement." (Pl. Mem., ECF No. 17 at 7.) The Settlement Agreement expressly states that all rights and obligations set forth in the Distributor Agreements (including the mandatory arbitration provisions and the 2016 Arbitration Agreement) remained intact. (Haar Decl. Ex. C, ECF No. 16-3 at 41–42 ¶ 15.15). Plaintiff accepted the standard settlement check from the *Carr* Action pursuant to this Settlement Agreement. (Compl., ECF No. 1 ¶ 30.) Even if Alexander had accepted the additional $3,500, he also would have accepted the following provision in the Amendment to Distributor Agreement: "Except as specifically set forth herein, the [Distributor] Agreement, including any prior amendments thereto, remains in full force and effect except as specifically amended by the terms herein. . . . Such [Distributor] Agreement . . . may not be modified except by written agreement of the parties or as otherwise

11

set forth in the [Distributor] Agreement." (Halpern Decl. Ex. 1, ECF No. 18-1 at 8 ¶ 7.) Therefore, Plaintiff's choice to reject the $3,500 and the Amendment to Distributor Agreement could not and did not terminate the 2016 Arbitration Agreement. Plaintiff simply could not amend the 2016 Arbitration Agreement without Defendant's written consent. *See TMG Health, Inc. v. UnitedHealth Grp., Inc.*, No. 07-CV-0115, 2007 WL 1258133, at *3 (E.D. Pa. Apr. 27, 2007) (ruling that a settlement agreement that referenced itself as an "addendum" did not rescind or amend an arbitration provision of a prior agreement because the settlement agreement "did not on its face expressly or unambiguously abrogate the valid underlying arbitration provision").

### b.  Defendant is Not Equitably Estopped from Enforcing the Arbitration Agreement

"Traditional principles of equitable estoppel apply in the arbitration context just as they apply to other types of contractual disputes." *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 273 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020). "It is well settled under Pennsylvania law that the defense of equitable estoppel can only be maintained if the party asserting the defense can show that 'one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.'" *G. & V. Gen. Contractors, Inc. v. Goode*, No. CIV. A. 86-7408, 1990 WL 79436, at *4 (E.D. Pa. June 7, 1990).

Plaintiff has failed to show that equitable estoppel applies. Plaintiff asserts that Alexander "relied on the representations in the settlement notice and the arbitration package"

12

and that he declined to accept $3,500 "for the very purpose of not having to arbitrate." (Tr., ECF No. 22 at 17:12–17.) Fatally for Plaintiff's argument, however, nothing in the record demonstrates that Defendant disavowed arbitration. Quite the opposite, the Settlement Agreement expressly stated that "nothing in this Settlement Agreement shall otherwise affect or alter the rights and obligations of the Parties or Settlement Class Members, as set forth in their Distributor Agreements" (which included mandatory arbitration). (Haar Decl. Ex. C, ECF No. 16-3 at 41–42 ¶ 15.15). Accordingly, Plaintiff has not shown that he "rightfully relied" on the Settlement Notice or arbitration package to believe that arbitration is not applicable here.

### B. This Dispute Falls Within the Scope of the Arbitration Agreement

Plaintiff's claims fall within the scope of the 2016 Arbitration Agreement "because the language in the arbitration provision expressly indicates an intention to arbitrate disputes such as the one before the Court." *Shalomayev v. Altice USA, Inc.*, No. 21-CV-5540 (MKB), 2022 WL 2359406, at *6 (E.D.N.Y. June 30, 2022). Claims covered by the Arbitration Agreement include "any claim, dispute, and/or controversy except as specifically excluded herein, that either DISTRIBUTOR (including its owner or owners) may have against COMPANY . . . arising from, related to, or having any relationship or connection whatsoever with the Distributor Agreement between DISTRIBUTOR and COMPANY ("Agreement"), including the termination of the Agreement" and "include, but are not limited to: breach of contract" claims. (Haar Decl. Ex. B, ECF No. 16-2 at 35–36.) Plaintiff pleads that the instant action "aris[es] from Plaintiff's purchase of two distributorships for selling Defendant's baked goods, which were terminated by the Defendant, contrary to the terms of their franchise agreements and to the implied covenant of good faith and fair dealing." (Compl., ECF No. 1 ¶ 1.)

13

Plaintiff's claims that "[Defendant] acted in bad faith by terminating [Plaintiff's] agreements because of brief periods of arrears" and that "[Defendant's misrepresentation of a service-related issue with [Customer] is evidence of its bad faith" fall within the scope of the 2016 Arbitration Agreement. *See Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, Nos. 950548, 950549, 950646, 584 F.3d 513, 556 (3d Cir. 2009) ("Indeed, it seems clear that the arbitration provision was written to cover disputes exactly like the one between the parties here.").

### C. A Stay is Warranted

"[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). A stay is warranted where, as here, the decision to compel arbitration would affect Plaintiff's claims arising from Defendant's termination of the Distributor Agreements and Defendant seeks a stay of the litigation. Accordingly, the Court respectfully recommends that a stay of this action pending completion of arbitration proceedings. *Id.* at 343.

## IV. CONCLUSION

Based on the foregoing, the Court respectfully recommends that Defendant's motion to compel arbitration at ECF No. 14 should be **granted** and this action should be stayed in its entirety. The Court further recommends that, if the parties proceed to arbitration, then they shall submit a joint status report within 14 days of the resolution of the arbitration.

A copy of this Report and Recommendation is being served on all parties via ECF. Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests

for an extension of time to file objections shall be directed to Judge DeArcy Hall. If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

                                                  **SO ORDERED.**

Brooklyn, New York
March 10, 2023

                                                  /s/ Marcia M. Henry
                                                  MARCIA M. HENRY
                                                  United States Magistrate Judge